**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PAUL WELTER, *et al.*,<br>*Plaintiffs*,<br>v.<br>DEFENSE HEALTH AGENCY,<br>*Defendant*. | Civil Action No. 25 - 2875 (SLS)<br>Judge Sparkle L. Sooknanan |

**MEMORANDUM OPINION**

In this Freedom of Information Act (FOIA) case, Paul and Teresa Welter seek a single investigative report from the Defense Health Agency (DHA) concerning suspected medical abuse of the Welters' two minor daughters. DHA produced the report with significant redactions, relying on FOIA Exemptions 3, 5, 6, and 7(C) to justify its withholdings. Both sides now seek summary judgment. The Court grants in part and denies in part both motions. DHA may not withhold the report in full under Exemption 3, but it has justified its redactions under Exemptions 5, 6, and 7(C).

**BACKGROUND**

**A. Statutory Background**

"FOIA 'implement[s] a general philosophy of full agency disclosure.'" *Informed Consent Action Network v. NIH*, No. 23-cv-926, 2026 WL 585104, at *1 (D.D.C. Mar. 3, 2026) (alteration in original) (quoting *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989)). The statute "requires every federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)(A)). "Agencies must construe FOIA requests liberally and can only withhold or redact documents if

the information requested 'falls within one of nine statutory exemptions.'" *Informed Consent Action Network*, 2026 WL 585104, at *1 (quoting *People for the Ethical Treatment of Animals* (*PETA*) *v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014)); *see* 5 U.S.C. § 552(b)(1)–(9). These exemptions demonstrate that the public's right to information is "not absolute and that disclosure of certain information may harm legitimate governmental or private interests[.]" *Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) (cleaned up). The agency bears the burden of establishing that an exemption applies and ordinarily "must disclose all reasonably segregable, nonexempt portions of the requested record(s)." *PETA*, 745 F.3d at 540 (cleaned up). And the agency must show that it "reasonably foresees that disclosure would harm an interest protected by" one of FOIA's nine exemptions or that disclosure is otherwise prohibited by law. 5 U.S.C. § 552(a)(8)(A)(i).

**B. Factual and Procedural Background**

The Court draws the facts from the Parties' Statements of Material Facts and the underlying materials referenced in those statements. *See* Pls.' Statement of Undisputed Facts (PSOF), ECF No. 17-1; Def.'s Statement of Undisputed Material Facts (DSOF), ECF No. 21-3. The Court assumes the facts in those statements to be true unless they have been specifically disputed, and it assumes the truth of other undisputed statements in the record. *See* Fed. R. Civ. P. 56(e)(2); *see also* LCvR 7(h)(1).[1]

In November 2020, Teresa Welter reported to the Army's Criminal Investigative Division (CID) that one of her minor daughters may have been sexually abused by a Department of Defense Education Agency (DODEA) contractor tasked with transporting the child to and from school in Stuttgart, Germany. PSOF ¶ 1. A month later, Dr. Brian Brennan, a pediatrician affiliated with the

---

[1] Local Rule 7(h) provides that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

Armed Forces Center for Child Protection (AFCCP), produced a 14-page report "render[ing] an opinion" on whether Mrs. Welter herself had medically abused her two daughters. *See* Redacted Report, Pls.' Ex. 3, ECF No. 17-2; PSOF ¶ 2; Decl. of Patrick L. Lahiff (Lahiff Decl.) ¶¶ 6–10, ECF No. 21-4. The Air Force then investigated the Welters for medical abuse of their daughters. PSOF ¶ 11.

In April 2025, the Welters submitted a FOIA request to DHA—the federal agency responsible for, among other things, overseeing military health care facilities, *see* 10 U.S.C. § 1073c(b)—seeking Dr. Brennan's report, PSOF ¶ 16; DSOF ¶ 21. The Welters ultimately filed a FOIA suit to obtain the document. Compl. ¶¶ 9–13, ECF No. 1. In January 2026, DHA produced the report with extensive withholdings under FOIA Exemptions 3, 5, 6, and 7(C). *See* PSOF ¶¶ 18–19; DSOF ¶¶ 27, 31. And in April 2026, DHA produced a withholding memorandum—in lieu of a *Vaughn* index—to justify its withholdings. *See* Withholding Mem., Pls.' Ex. 5, ECF No. 17-4; PSOF ¶ 20. The Parties now cross-move for summary judgment. *See* Pls.' Mot. Summ. J. (Mot.), ECF No. 17; Def.'s Opp'n & Cross-Mot. Summ. J. (Opp'n & Cross-Mot.), ECF No. 21-2; Pls.' Reply & Cross-Opp'n (Reply & Cross-Opp'n), ECF No. 23; Def.'s Cross-Reply (Cross-Reply), ECF No. 24. Those motions are ripe for review.[2]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA suit, an agency is entitled to

[2] The Welters' summary-judgment motion briefly argues that the withheld report must also be released under the Privacy Act. *See* Mot. at 13–14. But any Privacy Act claim is not properly before the Court. The Welters' Complaint pleads only a single FOIA violation, Compl. ¶¶ 9–13, and they "cannot amend their complaint through summary-judgment briefing[,]" *Barot v. Aldon Mgmt.*, No. 18-cv-140, 2023 WL 6199075, at *7 n.5 (D.D.C. Sep. 22, 2023) (cleaned up).

summary judgment if it establishes that "no material facts are in dispute" and that all information subject to a request has either "been produced or is wholly exempt from the Act's inspection requirements." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (cleaned up).

Typically, an "agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions." *Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).

## DISCUSSION

DHA invokes FOIA Exemption 3 to withhold Dr. Brennan's report in full, and it justifies redactions of the report under Exemptions 5, 6, and 7(C). The Court considers each exemption in turn, ultimately concluding that DHA fails to meet its burden on Exemption 3 but properly invokes Exemptions 5, 6, and 7(C).

### A. Exemption 3

First up is Exemption 3, which DHA claims allows it to withhold Dr. Brennan's report in full. Opp'n & Cross-Mot. at 5. Exemption 3 applies to records that are "specifically exempted from disclosure by statute" so long as that statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria

for withholding or refers to particular types of matters to be withheld."[3] 5 U.S.C. § 552(b)(3)(A). "To withhold records under Exemption 3, an agency must make two showings: that the statute is one of exemption as contemplated by Exemption 3, and that the withheld material falls within the statute." *Corley v. DOJ*, 998 F.3d 981, 984–85 (D.C. Cir. 2021) (cleaned up).

Here, DHA relies on the Child Victims' Act to justify withholding Dr. Brennan's report under Exemption 3. *See* Opp'n & Cross-Mot. at 4 (citing 18 U.S.C. § 3509(d)(1)). Both Parties agree that the Act is a qualifying Exemption 3 statute. *See* Opp'n & Cross-Mot. at 5; Reply & Cross-Opp'n at 1; *see also Corley*, 998 F.3d at 985 (holding that "the Child Victims' Act unambiguously qualifies as an Exemption 3 statute"). So the validity of DHA's Exemption 3 withholding turns on whether the report falls within the ambit of the Child Victims' Act.

The Child Victims' Act applies to children "who [are] or [are] alleged to be . . . a victim of a crime of physical abuse, sexual abuse, or exploitation" or "a witness to a crime committed against another person[.]" 18 U.S.C. § 3509(a)(2). The Act imposes a duty of confidentiality on "all employees of the Government" when "acting . . . in connection with a criminal proceeding[.]" *Id.* § 3509(d)(1)(A), (B)(i). It requires covered government personnel to:

> (i) keep all documents that disclose the name or any other information concerning a child in a secure place to which no person who does not have reason to know their contents has access; and
>
> (ii) disclose documents described in clause (i) or the information in them that concerns a child only to persons who, by reason of their participation in the proceeding, have reason to know such information.

[3] Exemption 3 also requires that the withholding statute "specifically cite[]" to Section 552(b)(3)(B), but that stricture applies only if the statute was "enacted after the date of enactment of the OPEN FOIA Act of 2009[.]" 5 U.S.C. § 552(b)(3)(B). As discussed below, DHA relies on 18 U.S.C. § 3509(d), *see* Opp'n & Cross-Mot. at 5, which was enacted as part of the Crime Control Act of 1990, Pub. L. No. 101-647, 104 Stat. 4789, 4798–4805. Thus, Subsection 552(b)(3)(B) is not implicated here.

*Id.* §3509(d)(1)(A)(i)–(ii). Thus, to withhold a document under the Act, an agency must show that that the document was (1) collected or generated "in connection with a criminal proceeding,'" and (2) "disclose[s] the name or any other information concerning a child[.]" 18 U.S.C. § 3509(d)(1)(A), (A)(i).

Beginning with the first prong, "[t]he term 'criminal proceeding' is not defined in the Child Victims['] Act." *Mid-Atl. Innocence Project v. FBI*, No. 23-cv-2112, 2026 WL 775907, at *6 (D.D.C. Mar. 19, 2026). And the Parties read that term differently. DHA contends that the term "criminal proceeding" includes a federal investigation into "allegations of child abuse . . . and sexual assault[.]" Opp'n & Cross-Mot. at 7–8. The Welters counter that it requires a "judicial" proceeding. *See* Mot. at 5–6; Reply & Cross-Opp'n at 2–4. The Court concludes that the Welters have the better reading. An agency invoking Subsection 3509(d) of the Child Victims' Act to withhold records under Exemption 3 must show that the records relate to a judicial proceeding.

"Absent a reason to think otherwise, [courts] interpret statutory terms according to the ordinary meanings they had when they were enacted." *USPS v. Konan*, 607 U.S. 391, 399 (2026). "To determine the ordinary meaning of a legal term, [courts] may look to contemporaneous dictionaries." *Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 766 (D.C. Cir. 2025) (cleaned up). In 1990—when the Child Victims' Act was enacted, *see supra* note 3—the ordinary meaning of "criminal proceeding" encompassed some form of *judicial* involvement, rather than a criminal investigation. Dictionaries explained that a criminal proceeding is "[o]ne instituted and conducted for the purpose either of preventing the commission of crime, or for fixing the guilt of a crime already committed and punishing the offender," and clarified that "[s]trictly, a 'criminal proceeding' means some step taken before a court against some person or persons charged with some violation of the criminal law." *Criminal Proceeding*, *Black's Law Dictionary* (6th ed. 1990);

*see also Criminal Proceeding, Ballentine's Law Dictionary* (3d ed. 1969) ("A proceeding in court in the prosecution of a person charged or to be charged with the commission of a crime, contemplating the conviction and punishment of the person charged or to be charged."). Thus, a plain reading of Subsection 3509(d) reveals that a criminal investigation does not suffice.

The structure of the Child Victims' Act aligns with its text. The Supreme Court has explained that "[i]n a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) (citing Antonin Scalia & Bryan Garner, *Reading Law* at 170–71 (2012)). Here, each of Section 3509's five uses of the term "criminal proceeding" contemplates a *judicial* proceeding. *See* 18 U.S.C. § 3509(k) (A "civil action shall be stayed until the end of all phases of the criminal action and any mention of the civil action *during the criminal proceeding* is prohibited. As used in this subsection, a criminal action is pending until its final adjudication in the trial court." (emphasis added)); *id.* § 3509(m)(1) ("In any *criminal proceeding*, any property or material that constitutes child pornography . . . shall remain in the care, custody, and control of either the Government or the court." (emphasis added)); *id.* § 3509(m)(2)(A) ("Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any *criminal proceeding*, any request by the defendant" to reproduce certain material. (emphasis added)); *id.* § 3509(m)(3) ("In any *criminal proceeding*, a victim . . . shall have reasonable access to any property or material that constitutes child pornography . . . depicting the victim, for inspection, viewing, and examination at a Government facility or court[.]" (emphasis added); *see also Mid-Atl. Innocence Project*, 2026 WL 775907, at *6 (citing 18 U.S.C. § 3509(d)(1)(A), (k), (m)(1), (m)(2)(A), (m)(3)) (concluding that "[t]he natural reading of 'criminal proceedings' throughout [Section 3509] is that this phrase refers to criminal actions in federal courts").

DHA makes three arguments to the contrary, none of which persuade the Court.

*First*, DHA contends that interpreting the Child Victims' Act to exclude investigations "would invert the statute's protective purpose." Opp'n & Cross-Mot. at 10. But Congress said otherwise in passing the Child Victims' Act. It explained that "[a]s the number of child abuse cases continues climbing each year, it has become increasingly urgent that America design special procedures to protect child victims and witnesses *in court*." H.R. Rep. No. 101-681, pt. 1, at 165 (1990) (emphasis added). In any event, a statute's purpose cannot supplant its text. *See, e.g.*, *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) ("As [the Supreme Court] has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text; the Court may not replace the actual text with speculation as to Congress' intent." (cleaned up)). And as explained above, the text of Subsection 3509(d) requires a judicial proceeding. So DHA's purposive argument gets it nowhere.

*Second*, DHA marshals a trio of district court cases to support its broader reading of the Child Victims' Act. *See* Opp'n & Cross-Mot. at 7, 10; Cross-Reply at 4–6. But none of those cases involved the statute's criminal-proceeding requirement. DHA first relies on *Radar Online LLC v. FBI*, 692 F. Supp. 3d 318 (S.D.N.Y. 2023), where the court sustained the FBI's invocation of Exemption 3 "to protect names, images, and identifying information of minor children victims and witnesses within the child prostitution investigation of Jeffrey Epstein." *Id.* at 346 (cleaned up). But the court did not analyze the criminal-proceeding requirement of the Child Victims' Act, stating only that the "[p]laintiffs ha[d] not offered any basis to believe that the FBI's justification [was] insufficient." *Id.* And the FOIA request expressly sought "all documents relating to the FBI's investigation and *prosecution*" of Mr. Epstein for sex-trafficking crimes, *id.* at 333 (emphasis

added), thus placing the records squarely within the scope of a criminal proceeding covered by the Child Victims' Act.

DHA next invokes *Habeas Corpus Resource Center v. FBI*, No. 22-cv-01086, 2025 WL 3500672 (N.D. Cal. Sep. 30, 2025), where the court upheld the FBI's withholdings of documents "relate[d] to then-ongoing investigations or criminal proceedings regarding crimes against children[.]" *Id.* at *5. But again, the court did not consider whether the Child Victims' Act could be invoked in the absence of criminal proceedings. Rather, it grappled with an argument that "the information regarding children remains confidential and exempt even after the children have come of age or the underlying criminal proceedings have terminated." *Id.*

Finally, DHA points to *Rodriguez v. U.S. Department of the Army*, 31 F. Supp. 3d 218 (D.D.C. 2014). Once again, that court had no occasion to interpret the statute's criminal-proceeding requirement; the underlying FOIA request sought records related to an investigation that resulted in a criminal prosecution and conviction. *Id.* at 273. So none of DHA's cited cases advances its cause.

*Third*, DHA points out that the Child Victims' Act imposes a confidentiality obligation on "any law enforcement agency involved in the case[.]" 18 U.S.C. § 3509(d)(1)(B)(i). Reasoning from this provision, DHA argues that "if no duty attached until a court proceeding commenced," "the requirement for investigative agencies to maintain confidentiality would be superfluous . . . because there would be nothing for a law enforcement agency involved in the case to keep secure." Cross-Reply at 2–3. But of course, investigative agencies often retain records after a criminal prosecution concludes. So reading the Child Victims' Act to apply only to judicial proceedings does not defang the confidentiality obligations that the Act imposes on investigative agencies.

In sum, the Court is convinced that the term "criminal proceeding" in Section 3509 of the Child Victims' Act refers to criminal judicial proceedings, not merely criminal investigations. *Cf. Mid-Atl. Innocence Project*, 2026 WL 775907, at *6 (holding that the Child Victims' Act "is inapplicable to 'criminal proceedings' held in State or local courts that . . . are not federal courts subject to federal procedural and evidentiary rules"). Because DHA points to no qualifying "criminal proceeding" to which the withheld report relates, DHA cannot rely on Exemption 3 to withhold Dr. Brennan's report, and the Court need not reach the second prong of the Subsection 3509(d) analysis. Thus, the Court grants summary judgment to the Welters on Exemption 3.

**B. Exemption 5**

Next, DHA relies on Exemption 5 to redact "findings, opinions, and recommendations based on the personal opinions of the AFCCP multidisciplinary team" from Dr. Brennan's report. Opp'n & Cross-Mot. at 13 (citing Lahiff Decl. ¶ 28). Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). "To qualify under this exemption, a document must 'satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" *Welter v. U.S. Dep't of the Air Force*, No. 22-cv-3738, 2026 WL 1243400, at *3 (D.D.C. May 6, 2026) (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Relevant here, Exemption 5 includes the deliberative-process privilege. *Klamath Water Users*, 532 U.S. at 8.

"For a document to be covered by the deliberative process privilege, the document must be 'both predecisional and deliberative.'" *Welter*, 2026 WL 1243400, at *4 (quoting *Reps. Comm. for*

*Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021)). "A document is predecisional if it was 'generated before the agency's final decision on the matter[.]'" *Reps. Comm.*, 3 F.4th at 362 (alteration in original) (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021)). However, "a document can lose its predecisional character—and the protections of the privilege—if an agency adopts the document as its own." *Jud. Watch, Inc. v. DOD*, 847 F.3d 735, 739 (D.C. Cir. 2017). But "[t]o adopt a deliberative document, it is not enough for an agency to make vague or equivocal statements implying that a position presented in a deliberative document has merit; instead, the agency must make an '*express*[ ]' choice to use a deliberative document as a source of agency guidance." *Id.* (alteration and emphasis in original) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975)). Meanwhile, "[a] document is deliberative when it is 'prepared to help the agency formulate its position[,]' and it 'reflects the give-and-take of the consultative process[.]'" *Reps. Comm.*, 3 F.4th at 362 (first quoting *Sierra Club*, 592 U.S. at 268; and then quoting *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)). "In practice, these requirements 'tend to merge.'" *Hall & Assocs. v. EPA*, 633 F. Supp. 3d 35, 52 (D.D.C. 2022) (quoting *Access Reps. v. DOJ*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)).

DHA invokes the deliberative process privilege to redact "analysis, findings, opinions, and recommendations[.]" Withholding Mem. at 11–12; *see also id.* at 6. In support of these redactions, Patrick L. Lahiff, an Associate General Counsel in DHA's Office of General Counsel, attests that Dr. Brennan's report was prepared "at the request of" CID "as a part of a CID investigation . . . into allegations of sexual assault of the Welters' twin daughters by a third party, and allegations of child abuse of the Welters' twin daughters by Mr. and Mrs. Welter." Lahiff Decl. ¶ 4; *see also id.* ¶ 9 ("[T]he report was compiled for the express purpose of the CID's law enforcement investigation."). Mr. Lahiff further declares that "[t]he report's primary function was to provide

expert analysis of the medical information[,]" and that "[i]t contains the AFCCP's expert opinions, findings and recommendations to CID to help inform its law enforcement activities." *Id.* ¶ 10.

The Court is persuaded that DHA has adequately invoked the deliberative process privilege. The analysis and recommendations contained in the withheld report *preceded* CID's decision regarding whether and how to investigate the alleged abuse of the Welters' daughters. *Id.* ¶ 28. And Dr. Brennan prepared the report to aid CID in making those determinations. *Id.* ¶¶ 28–29. Thus, the report was both predecisional and deliberative: it was "generated before the agency's final decision on the matter" and "prepared to help the agency formulate its position." *Sierra Club*, 592 U.S. at 268.

The Welters argue that DHA has failed to establish that Dr. Brennan's report is (1) predecisional and (2) deliberative. The Court disagrees.

The Welters first contend that the report is not predecisional because it was the *final* position of either DHA, Mot. at 12–13, or the Air Force, Reply & Cross-Opp'n at 7–8. But other than pointing to DHA's acknowledgment that the Air Force investigated the Welters "based on" the report, PSOF ¶ 11, they offer no reason to believe that either DHA or the Air Force "expressly [] adopt[ed]" the report or "incorporate[d] [it] by reference" into a final agency action, *Sears*, 421 U.S. at 161. Relatedly, the Welters allege that "[t]he report was shopped around by both Dr. Brennan and the Air Force's Family Advocacy Officer to various Child Protective Agencies, requesting they open investigations on the same[.]" Mot. at 13. And they say that "the Air Force used it to open and substantiate its own" investigation. *Id.* But the Welters do nothing to rebut DHA's showing that Dr. Brennan prepared the report to assist CID's decisionmaking. As the D.C. Circuit has explained, "recommendations . . . suggesting a disposition of a particular case" that are "transmitted to superior authority for review and final action" qualify for the protection of the

deliberative process privilege. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980) (characterizing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168 (1975)). That principle is dispositive here: DHA's unrebutted evidence establishes that Dr. Brennan's report contained analysis and recommendations designed to aid CID in its investigation. Thus, DHA properly withheld the report's analysis, opinions, and recommendations as predecisional.

Next, the Welters argue that Dr. Brennan's report is not deliberative because it contains "purely factual content[.]" Mot. at 13. Specifically, they note that DHA's withholding memorandum describes the report as "quot[ing] or describ[ing] . . . medical information[.]" Withholding Mem. at 12. To be sure, the deliberative process privilege does not protect "[f]actual material that does not reveal the deliberative process[.]" *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (cleaned up). But "factual information is protected . . . if its disclosure may so expose the deliberative process within an agency." *Nat'l Ass'n of Minority Veterans v. U.S. Dep't of Veterans Affs.*, No. 21-cv-1298, 2024 WL 810032, at *10 (D.D.C. Feb. 27, 2024) (cleaned up). And here, the factual medical information of the Welters' daughters was "assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." *Mapother v. DOJ*, 3 F.3d 1533, 1539 (D.C. Cir. 1993).[4]

To the extent that the Welters intend to make a segregability challenge, that fails too. DHA's declarant has attested that the agency "did not withhold any reasonable [sic] segregable, non-exempt portions" of the report and "conducted a line-by-line segregability analysis of the

---

[4] Any factual medical information is also independently protected under Exemptions 6 and 7(C). *See infra* Discussion § C.

exempt portions of the document[.]" Lahiff Decl. ¶¶ 19, 39. "Sworn agency declarations are afforded 'a presumption of good faith' in FOIA litigation." *Leopold v. Fed. Hous. Fin. Agency*, No. 23-cv-1935, 2026 WL 2676063, at *7 (D.D.C. Sep. 11, 2026) (quoting *Shapiro v. DOJ*, 944 F.3d 940, 943 (D.C. Cir. 2019)).

In sum, the Court concludes that DHA properly redacted portions of Dr. Brennan's report under Exemption 5. The Court grants summary judgment to DHA as to its Exemption 5 redactions.

### C. Exemptions 6 and 7(C)

Finally, the Court considers DHA's Exemption 6 and Exemption 7(C) withholdings. FOIA Exemptions 6 and 7(C) both "seek to protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" *Id.* § 552(b)(7)(C).

Because Exemption 7(C) permits the withholding of records "if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a '*clearly* unwarranted' invasion to justify nondisclosure, Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." *ACLU*, 655 F.3d at 6 (cleaned up). For that reason, when an agency claims that records may be withheld under both exemptions, a court "need only consider whether [the agency] properly invoked Exemption 7(C)." *Id.*; *see also Reps. Comm.*, 489 U.S. at 756 (noting that "7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects": (1) it does not require an invasion of privacy to be

"clearly" unwarranted, just "unwarranted"; and (2) it "encompasses any disclosure that 'could *reasonably be expected* to constitute' such an invasion" (emphasis added) (quoting 5 U.S.C. § 552(b)(7)(C)). Thus, "the Court need only address whether the agency has properly withheld these documents under Exemption 7(C), and there is no need to separately consider the higher bar of Exemption 6." *Blixseth v. ICE*, No. 19-cv-1292, 2020 WL 210732, at *5 (D.D.C. Jan. 14, 2020); *see also Braga v. FBI*, 910 F. Supp. 2d 258, 267 (D.D.C. 2012) (same). So the Court evaluates whether DHA properly invoked Exemption 7(C). It first determines whether the withheld portions of the report comprise "records or information compiled for law enforcement purposes" and next considers whether their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7).

**1. Law Enforcement Purposes**

To invoke Exemption 7(C), an agency must make a "threshold showing that the records were compiled for law enforcement purposes." *Boyd v. EOUSA*, 87 F. Supp. 3d 58, 72 (D.D.C. 2015) (citing 5 U.S.C. § 552(b)(7)(C)). In other words, the "records must generally be generated during the course of an investigation and involve the detection or punishment of violations of law." *Pearce v. Dep't of Army*, No. 24-cv-520, 2025 WL 1905552, at *10 (D.D.C. July 10, 2025) (cleaned up). "[T]he focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. DOJ., Off. of Pro. Resp.*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (cleaned up).

Here, Dr. Brennan's report was compiled for law enforcement purposes. Recall that DHA's declarant attests the report was "prepared . . . as a part of a CID investigation . . . into allegations of sexual assault of the Welters' twin daughters by a third party, and allegations of child abuse of

the Welters' twin daughters by Mr. and Mrs. Welter." Lahiff Decl. ¶ 4. "CID is a federal criminal law enforcement investigative organization[.]" DSOF ¶ 55. And the report is stored in CID's case tracking system. DSOF ¶ 17. Exemption 7(C)'s statutory threshold requires nothing further.

In arguing otherwise, the Welters claim that CID's investigation focused on alleged sexual abuse by DODEA employees, rather than alleged medical abuse by Mrs. Welter. Reply & Cross-Opp'n at 6–7. They contend that because CID never investigated them for alleged medical abuse, *id.* at 6, DHA has not "articulate[d] the nexus between the object of the investigation and the report authored by Dr. Brennan[,]" and therefore cannot invoke Exemption 7(C), *id.* at 7 (citing *Campbell v. DOJ*, 164 F.3d 20, 33 (D.C. Cir. 1998)). This argument is wrong on two fronts. For starters, it contradicts DHA's declaration that CID was investigating both allegations of sexual assault by a third party and allegations of child abuse by the Welters. Lahiff Decl. ¶ 4. But even assuming that the Welters are correct that CID was only investigating the alleged sexual assault, the report would still be a record "compiled for law enforcement purposes[.]" 5 U.S.C. § 552(b)(7)(C). The object of the investigation has no bearing on the Exemption 7(C) statutory threshold.

**2. Unwarranted Invasion of Privacy**

"After clearing [the Exemption 7(C)] threshold, the agency faces a balancing test." *Ryan v. DOJ*, No. 23-cv-3815, 2026 WL 2676048, at *8 (D.D.C. Sep. 11, 2026). "First, a court will consider whether disclosure 'would compromise a substantial, as opposed to *de minimis,* privacy interest,' because '[i]f no significant privacy interest is implicated . . . FOIA demands disclosure.'" *Id.* (alteration in original) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner,* 879 F.2d 873, 874 (D.C. Cir. 1989)). Second, the Court must balance any privacy interests against any "countervailing public interest in disclosure" asserted by the Plaintiffs. *Boyd*, 87 F. Supp. 3d at 72–73.

**a. Privacy Interests**

"In the case of records related to investigations by criminal law enforcement agencies, Exemption 7(C) takes into consideration the 'strong interest' of all individuals—suspects, witnesses, and investigators—'in not being associated unwarrantedly with alleged criminal activity.'" *Rodriguez*, 31 F. Supp. 3d at 231 (quoting *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990)). As courts in this District have put it, "the general rule is that *any* third-party identifying information contained in law-enforcement records is categorically exempt from disclosure." *Cullen v. DHS*, No. 20-cv-113, 2023 WL 5607425, at *5 (D.D.C. Aug. 30, 2023) (emphasis in original) (cleaned up); *see also Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) ("[T]o the extent any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure[.]").

Here, DHA has identified three privacy interests that would be implicated by disclosure of the redacted portions of Dr. Brennan's report. All three are cognizable under Exemption 7(C).

*First*, DHA invokes the privacy interests of the Welters' minor daughters. DHA's memorandum avers that the report "contains intimate, detailed medical information concerning the children; details concerning the alleged sexual assault; and analysis of the children's medical information relating to the alleged child abuse and sexual assault." Withholding Mem. at 9. That type of third-party privacy interest is plainly sufficient under Exemption 7(C). *See, e.g.*, *Rodriguez*, 31 F. Supp. 3d at 234 (explaining in the context of Exemption 7(C) that "privacy interests are at their apex" when the statements at issue "detail the sexual abuse of a minor"); *Accurso v. FBI*,

No. 19-cv-2540, 2021 WL 411152, at *8 (D.D.C. Feb. 5, 2021) ("[V]ictims' names properly are withheld under Exemption 7(C).").

*Second*, DHA seeks to shield the identities of the report's author and a CID agent involved with the investigation. *See* Withholding Mem. at 9–10. These are also cognizable privacy interests under Exemption 7(C). *See, e.g.*, *Lazaridis v. DOJ*, 766 F. Supp. 2d 134, 144 (D.D.C. 2011) ("[T]he names of law enforcement officers who work on criminal investigations have usually been protected against release by exemption 7(C)."); *Schrecker v. DOJ*, 349 F.3d 657, 666 (D.C. Cir. 2003) (holding that "investigating agents . . . have a substantial interest in seeing that their participation remains secret" (cleaned up)); *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998) (recognizing the privacy interest of a government line attorney).

*Third*, and finally, DHA invokes Exemption 7(C) to protect the information of third-party providers described in the report. Withholding Mem. at 10. That interest, too, suffices for Exemption 7(C) purposes. *See, e.g.*, *Nation Mag.,* 71 F.3d at 894 (recognizing a privacy interest for "third parties who may be mentioned in investigatory files"); *see also Martin*, 488 F.3d at 457 (same).

**b. Public Interest**

On the other side of the scale—the "countervailing public interest in disclosure" furthered by the FOIA request, *Boyd*, 87 F. Supp. 3d at 72–73—the Welters rely entirely on a theory of "apparent wrongdoing" by DHA. Mot. at 11. "[W]here . . . the public interest being asserted" in an Exemption 7(C) case "is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester . . . must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have

occurred." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004). This standard is "demanding[.]" *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011).

The Welters do not clear this lofty bar. They first speculate that "the purpose of Dr. Brennan's report may have been to shy away from allegations of sexual abuse by DODEA employees in Germany[,]" citing a sexual-abuse conviction of a DODEA schoolteacher in Stuttgart during the same period as their daughters' alleged sexual abuse. Mot. at 10. They also note that the report's author expressed an inability to access their daughters' medical records—records that the Welters say the author should have been able to access. *See* Mot. at 10–11. These two theories, the Welters urge, "present[] some evidence that DHA, knowing Dr. Brennan's report is faulty, is attempting to shield it from disclosure." Mot. at 11. But the Welters present nothing to back up their claim of wrongdoing. Weighing this meager showing of public interest against the strong protection that Exemption 7(C) affords to third-party information, there is no doubt that DHA's withholdings were proper under Exemption 7(C). *See Rodriguez*, 31 F. Supp. 3d at 233 ("If there is a privacy interest in the requested materials and no public interest in disclosure, '[the court] need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time.'" (quoting *Horner,* 879 F.2d at 879).

In sum, DHA has sufficiently supported its Exemption 7(C) withholdings. Moreover, the Government would prevail even under Exemption 6's higher threshold. *Cf. Blixseth*, 2020 WL 210732, at *6. Accordingly, the Court will grant summary judgment to DHA as to Exemption 6 and 7(C).[5]

---

[5] Under FOIA, an agency may "withhold information . . . only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). The foreseeable-harm requirement does not apply to Exemption 3. *See id.* § 552(a)(8)(B); *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024) (explaining that Congress's 2016 addition of the foreseeable-harm requirement "limited withholding pursuant to all exemptions, except Exemption

### D. *In Camera* Review

The Welters urge the Court to review Dr. Brennan's report *in camera* to determine the propriety of DHA's withholdings. Mot. at 14–15; Reply & Cross-Opp'n at 8. But the D.C. Circuit has warned that "[w]hen the agency meets its burden by means of affidavits," *in camera* review "is neither necessary nor appropriate." *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). So *in camera* review is inappropriate here.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Plaintiffs' Motion for Summary Judgment, ECF No. 17, and the Defendant's Cross-Motion for Summary Judgment, ECF No. 20. The Defendant may not withhold the report in question in full under Exemption 3, but it has justified its redactions under Exemptions 5, 6, and 7(C).

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: October 26, 2026

3"). And the Welters do not contest DHA's showing on foreseeable harm for any of its withholdings under Exemptions 5, 6, and 7(C). *See generally* Mot. (not addressing foreseeable harm); Reply & Cross-Opp'n (same). On this record, the Court is satisfied that DHA has carried its burden. *See, e.g.*, Lahiff Decl. ¶ 29 (attesting that in the context of child-abuse and sexual-assault investigations, the public availability of AFCCP reports "would most certainly impact [] AFCCP's ability to offer frank and honest opinions and recommendations to help those that would rely on them the most—abused children"); *id.* ¶ 35 (stating that the release of the identities of "alleged child victims" in "the context of these investigative records would cause embarrassment, as well as unsolicited and unnecessary attention to be focused on these individuals" and "could force them to relive emotionally trying events, causing further invasion of their privacy, in excess of the harm they may have already endured"); Withholding Mem. at 9–10 (describing harms from disclosure to the Welters' children and AFCCP and CID staff).